# James A. Murphy and Thomas J. Hamilton, partners, doing business as Murphy & Hamilton, v. Herta S. Orne and Annie C. Howland, Appellants.

*Contract—Building contract—Penalty for delay—Evidence.*

In an action upon a building contract in which the defendants claim a per diem deduction for delay, a verdict and judgment for the plaintiffs for the full amount claimed will be sustained where the evidence for the plaintiffs, although to some extent contradicted, tends to show that the delay was caused by doing necessary piling, which the plaintiffs did by direction of and under an independent agreement with defendants' agent, and also by changes in and additions to the original contract ordered, by the defendants or their agents.

In an action upon a building contract where the defendants claim a per diem penalty for delay, a judgment in favor of the plaintiffs will not be reversed because the architect's certificate was admitted in evidence, if it appears from the undisputed evidence that the certificate was not a final certificate, and the jury were plainly instructed that for any delay for which the plaintiffs were responsible, there should be a deduction from the balance accruing thereon, in accordance with the terms of the contract.

Provisions in a building contract that disputes relating to various specified matters shall be decided by the architect, will not be extended to a dispute arising from a delay in completing the building, unless the contract in plain terms invests the architect with the authority to decide such dispute.

Argued Nov. 3, 1897. Appeal, No. 137, Oct. T., 1897, by defendants, from judgment of C. P. No. 1, Allegheny County, Dec. T., 1895, No. 432, on verdict for plaintiffs. Before STER-RETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a building contract. Before COLLIER, J.

The material portions of the contract sued upon were as follows:

"2. It shall be lawful for the said party of the first part at all times to direct in writing any additions to or deviations from the plans and specifications aforesaid, without in any other respect or particular varying this agreement or impairing the forces thereof; and in case of any such addition or deviation as directed in writing, such further time shall be allowed for

the completion of said work as said architect shall decide to be reasonable; and such sums of money shall be added to or subtracted from the amount of the consideration hereinafter agreed to be paid, as the said architect shall judge the increase or diminution in the amount of work and materials thereby occasioned to be fairly worth.　And it is expressly agreed that no extras or alterations or additions of any kind shall be recognized, allowed, or paid for by said party of the first part, nor shall said first party be held liable for the same, unless the same have been expressly ordered and directed, and payments for the same expressly agreed for, in writing, by the party of the first part, or the architect aforesaid, and in case anything is shown upon the plans hereto annexed and not particularly specified in the specifications hereto annexed, or in case anything is specified and not shown upon said plans, which is necessary to complete the work of building, the same must be done at the cost of the party of the second part, notwithstanding said omission, and in no case shall any additional payments be allowed for the same.　And it is mutually agreed that the architect shall have the right to direct such changes in construction as in his judgment shall become necessary or desirable during the progress of the work, provided that the same shall involve no additional expense, and provided also, that in case any such change shall make the work less expensive than that required by the original plans and specifications, a proportional deduction shall be made from the contract price hereinafter agreed to be paid. . . .

"4. In case of any failure or unreasonable delay of the said party of the second part, whether by act or default in the performance of any of the above stipulations or compliance with the true intent of these presents, not authorized in writing by the said party of the first part, or said architect, it shall be lawful for the said party of the first part, or said architect, after giving five days' notice in writing, of their intention to the said party of the second part, to provide other workmen and materials to complete the work, in the place of the said party of the second part, and to deduct the costs and charges thereby occasioned from the sums otherwise becoming due to the said party of the second part, under this agreement, without prejudice to any other remedy which the said party of the first part may have for breach thereof.

"5. If any question should arise during the progress of the work, or in the settlement of accounts touching the same, it is to be referred to the said architect, whose decision shall be binding upon both parties. . . .

"10. The work under this contract is to be begun forthwith and carried on promptly, and to be completed to the satisfaction of the architect, as expressed by his written certificate, the first day of January, 1895. And in order to secure the execution of this work at and within the time specified, it is hereby distinctly declared that the damages arising from the non-fulfilment of this contract, as regards time, shall be twenty-five dollars as a fair rental of the premises for each and every day the work remains unfinished, and which sum of damages shall be deducted from the contract price, and be as liquidated damages, and not in the nature of a penalty. Should said second party be obstructed or delayed in the prosecution or completion of the work by the neglect, delay or default of any other contractor, or by alterations in said work, or by fire, or by unusual action of the elements, or by the abandonment of the work by the employees through no default of the said second party, then there shall be an allowance of additional time beyond the date set for the completion of the said work, but no such allowance shall be made unless a claim is presented in writing at the time of such obstruction or delay. The architect shall award and certify the amount of additional time to be allowed; in which case said second party shall be released from the payment of the stipulated damages for the additional time so certified, and no more." ·

At the trial, counsel for the plaintiffs offered in evidence exhibit No. 3, being the specifications.

Counsel for plaintiff objected.

By the Court: We have already admitted that. The objection is overruled and the bill sealed for defendant. [2]

The exhibit was as follows:

**Exhibit No. 3.**

*Chicago, 7th June, 1895.*

*To* W. I. HOWLAND.

*Please pay to* MURPHY & HAMILTON,

Five Thousand and $\frac{00}{100}$ *Dollars,*

($5,000.00) *in part payment for general*

*work on building at* Pittsburgh, Pa., 817 Penn Ave.

HENRY IVES COBB, *Architect.*

*Received..............189  the amount of this certificate.*

MURPHY & HAMILTON, *Contractor.*

*Certificate No.* 2800

Office of
HENRY IVES COBB,
ARCHITECT.

*Memoranda.*

| | | |
|---|---:|---:|
| *Amount Contract,* | 30,650 | 00 |
| *Approved extras,* | 1,608 | 50 |
| .......................... | 32,258 | 50 |
| *Deductions allowed,* | ...... | ...... |
| .......................... | ...... | ...... |
| *Amt. paid,* $ 18,000.00 | | |
| *Certificate* $ 5,000.00 | 23,000 | 00 |
| *Balance,* | 9,258 | 50 |

Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

It appears by the evidence in this case, that the plaintiffs and defendants entered into a written contract to build a warehouse in the city of Pittsburg, on Penn avenue, the location of which you have heard described in the testimony, the building to be completed by January 1, 1895. It also appears by the evidence that if the plaintiffs had proceeded with and finished their work by January 1, 1895, they would be entitled to the sum claimed in their statement—$9,258.50. You will observe by the evidence that there is no real contest as to the character of the

work or its value. The objection raised is that the building was not completed by January 1, 1895, as provided in the contract. Now the contract, being in writing between the parties, governs them and the contract saying that the building should be completed by January 1, 1895, and it being admitted that the building was not completed by January 1, 1895, it devolves upon the plaintiffs to show you good legal reasons, why they did not complete it on that date, or they would be obliged to abide by their contract. Now, remember that fact; that the building was not completed on January 1, 1895, as agreed in the written contract. [But the plaintiffs allege that they have a good reason for not completing it on January 1, 1895, and the reason they allege is this : That they were delayed by reason of a contract outside of the contract for the building, that is not included in the general building contract; to drive piles for the foundation ; that after the contract was made for the building, and the plans and specifications all drawn up, it was agreed on the part of the defendants with the plaintiffs that they should have piles driven first for the foundation, and that that contract was not within the contract for the building.] [8] That is the allegation of the plaintiffs, and it was necessary for them to establish it to your satisfaction; because it is the law of the land, that when two parties put their agreement in writing they must abide by it, unless they can show fraud, accident or mistake, or some other good and legal reason. The allegation of the plaintiffs is that the delay was caused by reason of this contract for driving piles, and that that was not the fault of the plaintiffs ; that by reason of this contract for driving piles they were delayed in their work on the building and prevented from finishing it by January 1, 1895, the date agreed upon ; that the delay caused by the pile driving ran them into the cold weather ; that then the brick work could not be done, and of course until the brick work was done and the roof on, the inside work could not be done. In addition to that, the plaintiffs alleged that the defendants themselves delayed the work further by changing the color of the terra cotta to be used in the front of the building, or by failing to decide upon a color, and also by failing to furnish the detail drawings necessary for the terra cotta work as promptly as they should have been furnished.

Now remember that the burden is upon the plaintiffs to satisfy you by the strength of evidence that the delay was caused as they allege, because it is the duty of the court and the jury to enforce written agreements, unless fraud, accident or mistake, or some other good and legal reason is shown, as I said before. It would be useless for people to make agreements in writing, if courts and juries were to change them without such reason. Hence the law is that the burden is upon the plaintiffs to show you by the weight of the evidence, in this case, that they did not finish the building by the time named in the contract, because they were delayed by the defendants by reason of this contract for driving piles, and by the other matters to which I have referred, and which you will remember in the evidence.

[If the plaintiffs have satisfied you by the weight and strength of the evidence that they were delayed in their work, as they allege, up to the time that the building was substantially finished, then the plaintiffs would be entitled to their bill, because Mr. Remington, who represented Mr. Cobb, the architect, says in his testimony that there was no complaint as to the character of the work, but only as to the time of completion of the building. Mr. Howland, representing the defendants, also testified distinctly that there was no objection to the character of the work; the only complaint being as to the time it was finished.] [4]

[With these instructions, it would probably be best for you to first determine when the building was substantially finished. That is a very important question, and you cannot well examine the case until you determine it. Upon that question there is a conflict of testimony; the plaintiffs contending that it was completed about the middle of May, and the defendants contending that it was not completed until the latter part of June, I believe. You will determine when the building was substantially completed, and when you have determined that, then you will determine whether or not this contract for driving piles, which was outside of the general building contract, delayed the plaintiffs in their work up to the time the building was substantially completed. If that was the cause of the delay, and the work could not have been done sooner, then the plaintiffs would be entitled to their claim of $9,258.50, with interest. There is some dispute about an item of $15.00, which you will remember,

for some extras. The amount is not large, but you will consider that item in examining the case. In the statement, the extras are specified distinctly, and the balance that would be due if there had been no delay. Of course you understand what is meant by the substantial completion of the building. It is not that there were some windows to be fixed, or any trifling matters of that kind, but when was it substantially completed so that the defendants could have taken possession of it and occupied it. When you have fixed that date, then ascertain if the cause of delay is as alleged by the plaintiffs, and if the delay would cover the time from the date fixed in the contract for the completion of the building to the date when you find it was actually substantially completed.] [5]

It is contended here by the defendants that the evidence shows, even taking the plaintiffs' own story, that the delay was entirely too great, and that they could have done much better; indeed they claim the whole one hundred and seventy-six days' delay, claiming that the plaintiffs should have finished the building by January 1, 1895, as provided in the contract, and they claim damages for that amount, to be set off against the claim of the plaintiffs. [Now, if you find that the delay which the plaintiffs allege was caused by the defendants does not cover the time from January 1, 1895, up to the time you find the building to have been actually substantially finished, then the defendants would be entitled to a set-off for whatever part of that time the delay so caused did cover.] [7]

Verdict and judgment for plaintiffs for $9,258.50. Defendants appealed.

*Errors assigned* among others were (2) in admitting architect's certificate; (4, 5, 7, 8) above portions of charge, quoting them.

*William R. Blair*, for appellants.—The court erred in not sustaining the objection, and in not ordering the plaintiff to amend so that defendants could properly controvert what might be stated by plaintiff: Irwin v. Shultz, 46 Pa. 74.

Under the contract, the architect's certificate was a sine quo non to recovery by the plaintiffs, in the absence of fraud, or other just reason for its nonproduction: Quigley v. DeHass,

82 Pa. 267; Hartupee v. City of Pittsburgh, 97 Pa. 107; Hostetter v. City, 107 Pa. 419; Brown v. Decker, 142 Pa. 649; Kennedy v. Poor, 151 Pa. 474; Gowen v. Pierson, 166 Pa. 264; Gillison v. Wanamaker, 140 Pa. 358.

It is well settled that in cases of this kind, the two contracts, the general and the subsequent one, are to be construed together, and that the provisions of the original general contract are only modified so far as it is expressed in the second agreement: Ellmaker v. Ins. Co., 6 W. & S. 439; Spangler v. Springer, 22 Pa. 454; Irwin v. Shultz, 46 Pa. 74; McCauley v. Keller, 130 Pa. 53.

*E. G. Ferguson*, with him *J. S. Ferguson*, for appellees.— This change in construction, and the making of the separate contract for it, was, we contend, a waiver of the time of completion fixed by the agreement of August 9, 1894, and consequently the penalty provided for in that contract cannot be enforced: Moore v. Carter, 146 Pa. 492; Lloyd on Buildings (2d ed.), sec. 39; Lilley v. Person & Riegel, 168 Pa. 219; White v. Braddock Boro. School District, 159 Pa. 201; Huckestein v. Kelly, 139 Pa. 201; Gallagher v. Sharpless, 134 Pa. 134.

OPINION BY MR. JUSTICE McCOLLUM, April 4, 1898:

The contract between the parties to this litigation was executed on August 9, 1894, and it called for the erection and completion of the building provided for therein, on January 1, 1895. It contained a stipulation to the effect that, for each day subsequent to the last mentioned date, and before the completion of the building, there should be deducted from the contract price twenty-five dollars. The plaintiffs' contention is that the building was finished in accordance with the contract early in May, 1895, while the defendants contend that it was not completed until some time in June of that year. The character of the work done and materials furnished by the plaintiffs in and about the erection and construction of the building is not complained of. The material dispute between the parties relates to and arises from the failure of the plaintiffs to complete the building within the time stipulated in the contract. The plaintiffs allege that the delay in the completion of the building

was attributable to several causes, the principal of which was the piling they did by direction of and under an independent agreement with the defendants' agent.   The authority of the agent to direct the piling is not disputed.   It was work not included in the general contract, but which, on testing the ground on which the building was to be erected, was deemed by the architect and the owners essential to a substantial and safe foundation for it. The plaintiffs claimed and testified on the trial that the piling together with the notice they had from the city that no obstructions would be allowed on the sidewalks or in the streets during the week of the Grand Army encampment, postponed their work under their building contract with the defendants about two months.   The most serious consequence of the delay thus caused was that they were unable to commence the brickwork until November 9, and to complete it until March 23.   It was outdoor work, and good weather was essential to the prompt performance of it.   From the commencement to the completion of it the weather was unfavorable and the men employed to carry it on were not able to work more than half the time, because of the cold weather and the rain and snow storms to which they were exposed.   The evidence shows that during the period in which the work was done the conditions were inconsistent with and plainly opposed to an earlier completion of it.   In addition to the matters already mentioned there were minor causes of delay for which the plaintiffs were not responsible, and which need not be enumerated here.   They were mainly based on changes in or additions to the original contract, and were ordered by the defendants or their agents.   It should be stated in this connection that the plaintiffs attributed some of the delays to the failure of the architect to prepare the drawings to work by as soon as he should have done, and that they were thereby hindered in the prosecution of the terra cotta and other work in which such drawings were necessary.

The plaintiffs' showing of the causes of the delay in the completion of the building was not fully met or answered by the evidence presented by the defendants.   They alleged, however, and introduced evidence to show that the plaintiffs' claim as to the time of the completion of the building was incorrect.   On this point there was a difference between the parties of a month or more.   Remington testified that when he came to Pittsburg

on March 9, and for a few days after that time he had no complaint to make as to the rapidity with which the work was progressing, but that before he left he thought " they were nursing it along." He also testified that he did not remember whether he agreed with Murphy at any time to give him the final certificate for the work, but that he was positive that exhibit No. 3 was not in any sense such a certificate. He had no connection with or supervision of the work until March 9. Howland testified that prior to January 1, 1895, he urged the plaintiffs to greater promptness in the construction of the building and called their attention to the time specified in the contract for the completion of it. He also testified that he had submitted his claims under the contract to the architect. He does not appear to have taken any considerable part or interest in the work, or to have given the plaintiffs any instructions in regard to it, aside from what he said to them respecting the terra cotta. We may add that besides the oral testimony introduced by the litigants they appealed to and gave in evidence the correspondence between them in support of their respective claims.

Upon the whole evidence in the case the single question presented for the determination of the jury was whether the delay in the completion of the building was caused by the acts and orders of the defendants or their agents. If it was, the plaintiffs were entitled to the balance of the contract price. If it was not, and all or any part of the delay was attributable to the plaintiffs, there should be a deduction of twenty-five dollars for each day covered by or included in it. The question was submitted by the court in a charge that was impartial and free from error, and the jury found that the plaintiffs were not in default.

We do not find in the admission of exhibit No. 3 any warrant for the reversal of the judgment, nor any reasonable ground for the contention that the defendants were injured by it. The undisputed evidence was that it was not a final certificate, and the jury were plainly instructed that, for any delay for which the plaintiffs were responsible, there should be a deduction from the balance appearing thereon, in accordance with the terms of the contract.

We cannot sustain the defendants' contention that the dis-

pute arising from the delay in completing the building must be determined by the architect and not by the court and jury. It appears to be based on the second and fifth clauses of the contract, but we are not convinced that either of them includes or relates to the decision of the question involved in this suit. If it was the intention of the contracting parties to invest the architect with the authority now claimed for him, it should have been expressed in plain terms.

All of the assignments are overruled.

Judgment affirmed.