## Kann *v.* Bennett, Appellant.

*Arbitration—Building contract—Award of architect—Incomplete award*

1. An award of an arbitrator which is not final, or is not complete as to all the matters included in the submission, is void altogether, and is not admissible even as an account stated.

2. Where a building contract provides that matters in dispute shall be referred to the architect, whose decision shall be final and conclusive, and the architect in making his award certifies that he had not included certain items of materials furnished, as to which mechanics' liens had been filed, the award is incomplete and cannot be sued upon.

3. In such a case the owner might have waited until the mechanics' liens had been adjudicated, or he might have waived his rights as to

the items omitted, or with the acquiescence of the contractor he might have waived the submission of such items, but as he did none of these things, he is not entitled to sue upon the incomplete award.

4. Where the parties to a building contract select the architect as the person to whose final decision they are willing to submit the preliminary question of the contractor's default, and the ultimate one of the determination of the account between the parties, the award of the architect on these subjects is final so long as he acts independently and without fraudulent collusion with the owner. Partiality and some improper conduct on the part of the arbitrator in making the award will not impeach it, unless the party benefited thereby be implicated in the misconduct.

5. Where the award of an architect in a building contract is attacked for fraud, mere general allegations of fraud without stating the facts which sustain them are not sufficient. The facts upon which the charge is made must be shown, inasmuch as fraud is largely a conclusion of law from facts stated.

6. The rule that the award of an architect as to matters expressly made subject to his decision will not be disturbed does not at all apply beyond the express covenants of the contracting parties. Thus where a contract provides that, upon the default of the contractor, the owner may dispossess the contractor and complete the contract at the latter's expense, and that the decision of the architect as to matters in dispute shall be final, the architect has no power to allow the owner at the expense of the contractor the rental value of the building from the date allowed by the contract for completion of the building to the date of actual completion. In such a case, however, an item allowed by the architect to the owner for the supervision of the completion of the building is within the architect's cognizance.

Argued Oct. 17, 1911. Appeal, No. 43, Oct. T., 1911, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1903, No. 862, on verdict for plaintiff in case of William L. Kann v. William B. Bennett. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Action of assumpsit brought December 20, 1903, by William L. Kann, the owner, against William B. Bennett, the contractor, upon an award of an architect made under a building contract between the parties to the suit dated February 26, 1901. See same case, 223 Pa. 36.

The contract provided for the construction and erection

of a dwelling house in the city of Pittsburg and contained, inter alia, the following stipulations: "1. The contractor shall . . . . perform and finish under the direction and to the satisfaction of William Henry Sims, architect (acting as agent of said owner), all the work. . . . 2. . . . In event of any doubt or question arising respecting the true meaning of the drawings or specifications, reference shall be made to the architect, whose decision thereon shall be final and conclusive. . . . 3. Should any alterations be required in the work shown or described by the drawings or specifications, a fair or reasonable valuation of the work added or omitted shall be made by the architect (without exception or appeal). . . . 4. The contractor shall . . . . after receiving written notice from the architect . . . . proceed to remove . . . . all materials condemned by him, . . . . or take down all portions of the work which the architect shall condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and to the conditions of this contract. . . . 6. The contractor shall and will proceed with said work . . . . in a prompt and diligent manner, and shall and will wholly finish the said work . . . . on or before the 21st day of September, in the year 1901 . . . . and in default thereof the contractor shall pay to the owner fifty dollars for every day thereafter that said work shall remain unfinished, as and for damages. . . . 7. . . . The architect shall award and certify the amount of additional time to be allowed. 10. The owner agrees to provide all labor and material not included in this contract in such manner as not to delay the material progress of the work, and in the event of failure to do so, hereby causing loss to the contractor, agrees that he will reimburse the contractor for such loss; and the contractor agrees that if he shall delay the material progress of the work so as to cause any damage for which the owner shall become liable (as above stated), then he shall make good to the owner any such damage—over and above any damage for general delay herein otherwise provided; the

amount of such loss or damage, in either case, to be fixed and determined by the architect, whose decision shall be final, binding and conclusive without exception or appeal. 12. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties, and binding, without exception or appeal. 13. . . . The final payment shall be made within thirty days after this contract is completely finished; provided, that in each of the said payments the architect shall certify in writing

that all of the work upon the performance of which the payment is to become due has been done to his satisfaction; and provided further, . . . . that if at any time there shall be any lien or claim, for which, if established, the owner of said premises might be made liable . . . ., the owner shall have the right to retain . . . . an amount sufficient to completely indemnify him against such lien or claim. . . . And should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises, made obligatory in consequence of the former's default. 14. . . . No certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the owner; and no payment shall be construed to be an acceptance of any defective work."

The plaintiff claimed that the contractor was unduly delaying the construction of the building, and on August 31, 1901, the architect certified in writing to the plaintiff, that the defendant had "failed, refused and neglected to supply a sufficiency of properly skilled workmen or materials in the construction of said building, and that he has failed to prosecute the work with promptness and diligence;" and further that "such neglect, refusal and failure on the part of the said contractor is sufficient ground, if you so desire, for your terminating said contract." On September 3, 1901, the plaintiff notified the defendant that unless he remedied the default so certified by the architect within three days after the receipt of the notice, "that I will deem it my privilege to provide such labor and material as may be necessary, under the terms of the contract, for the erection of the said building." The defendant failed to comply with this notice; the plaintiff on or about September 8, 1908, terminated the employment of the contractor, entered into the possession of the premises and proceeded to finish the building

under the supervision of the architect. On October 16, 1902, the plaintiff wrote to the architect that in pursuance of his certificate of August 31, 1901, he, the plaintiff, had terminated the employment of the contractor and finished the building, and, "I do hereby request you to audit and certify the expense incurred by me, either for furnishing material or finishing the work required to be done under said contract, and all damages incurred by me through the default of the said Bennett, in accordance with the power and authority conferred upon you by the twelfth paragraph of the said contract." On October 17, 1902, pursuant to this request the architect notified the defendant that he would sit, "for the purpose of auditing and certifying the expense incurred by said Kann, either through furnishing materials or finishing said work, or damage incurred through your default," at a designated place upon a certain day and at an hour fixed, and "for the purpose of hearing the parties and their witnesses, at which time and place you may be present and be heard." The architect proceeded with the hearing as appointed, and on December 15, 1902, he made the written award sued upon in this case. In this award he certified that $5,083.84 was due from the defendant to the plaintiff. This included "damages caused by delay in completion of contract for dwelling, . . . . at rental value of same from September 21, 1901, when same should have been completed, as per contract, to June 1, 1902—252 days less 35 days extra time granted to contractor by architect—217 days at $1,800 per year—$1,070.14," and for "supervising construction—W. H. Sims—$1,013.30." The balance of the award was made up of items for labor and material. In the award the architect referred to the taking of testimony, and certified that, "under and by virtue of the terms of the twelfth paragraph of the said contract . . . . the said William L. Kann terminated the employment of the said contractor by reason of certain defaults on his part, which were duly certified by me as sufficient ground for such action . . . . and the said William L. Kann took pos-

session of the premises . . . . on or about the 7th day of
September, 1901, and employed other persons to provide
materials and finish the work required under said contract
to be performed by said contractor and did fully finish and
perform the work required to be done under said contract
by said Bennett. He further certified that the amount
due by the defendant to the plaintiff did not include any
sum for which the former might be liable by reason of ma-
terials furnished to the latter by a certain lumber com-
pany and a certain plumbing company prior to the termi-
nation of the contract, and for which mechanics' liens had
been filed, nor did it include "the amounts claimed by
J. W. Jacobs & Son, subcontractors, for the brick work
for said house, by reason of any materials furnished or
work done for and on behalf of said William B. Bennett
prior to the termination of his employment by the said
W. L. Kann."

At the trial the plaintiff offered the award and the other
documentary evidence already referred to, also certain
averments in the statement of claim which were not
denied in the affidavit of defense, and rested. The de-
fendant made various offers of proof, all of which were
refused, and the court gave binding instructions to find a
verdict for the plaintiff in the sum of $5,083.84 with in-
terest, less certain admitted credits; making the net
amount due to the plaintiff $6,625.75. Judgment was
entered upon the verdict thus rendered, and the defendant
has appealed.

*Errors assigned* were to the rulings of the court upon the
admission and rejection of evidence; and the last two, to
the refusal of binding instructions for the defendant and
the giving of such instructions for the plaintiff.

*John C. Bane,* with him *J. McF. Carpenter* and *C. L.
Stevenson,* for appellant.—An agreement as to arbitration
is not to be extended by implication beyond its plain
words: Somerset Borough v. Ott, 207 Pa. 539; Chandley

Bros. & Co. v. Cambridge Springs Borough, 200 Pa. 230; Murphy v. Orne, 185 Pa. 250; Lauman v. Young, 31 Pa. 306.

The defendant's right to introduce the evidence referred to in his offers is fully sustained by the decision of this court in Hunn v. Pennsylvania Institution for the Instruction of the Blind, 221 Pa. 403.

*John S. Ferguson,* for appellee.—It makes no difference that Sims, the architect, was styled in the contract, as the agent of the owner: Haley v. Bellamy, 137 Mass. 357; Kennedy v. Poor, 151 Pa. 472; Kihlburg v. U. S., 97 U. S. 398; Sweeney v. U. S., 109 U. S. 618 (3 Sup. Ct. Repr. 344); Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549 (5 Sup. Ct. Repr. 1035); Robbins v. Clark, 129 Mass. 145.

The findings cannot be impeached by this appellant except for fraud: Johnson's App., 9 Pa. 416; McCrelish v. Churchman, 4 Rawle, 26; Gates v. Steele, 58 Conn. 316; Cohn v. Goldman, 76 N. Y. 284.

If fraud is the defense, it must be shown in what it consisted: Sterling v. M. M. Ins. Co., 32 Pa. 75; Brown v. Street, 6 W. & S. 221; Moore v. Somerset, 6 W. & S. 262; Walker v. Geisse, 4 Whart. (Pa.) 252; Lord v. Ocean Bank, 20 Pa. 384; Marr's App., 78 Pa. 66.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

When the plaintiff offered the architect's certificate upon which he was suing, the defendant objected, inter alia, upon the ground that it was not a complete award; but it was admitted in evidence. This is complained of in the third assignment of error. The objection should have been sustained, for the award itself shows that the architect did not consider or pass upon at least three items within his cognizance, namely, the claims of the lumber company and the plumbing company, and the Jacobs claim for brick work. In Hamilton v. Hart, 125 Pa. 142, we said, per Mr. Justice MITCHELL, "It is well

settled that an award which is not final or is not complete as to all the matters included in the submission, is void altogether, and is not admissible even as an account stated;" citing authorities to the effect that "the motive from which the arbitrator resolved to abstain from determining the matters omitted seems to be immaterial," and that, though the arbitrator might declare he abstained from taking a certain item into consideration "for the reason that a suit in chancery was pending in regard to that account," it would not save the award. We further stated that "an award which leaves something still to be done by the arbitrator himself before the existing cause is determined, cannot be said to be final. . . ." The rule there laid down controls this case. If such a partial award as the one here present could be sued upon, we might have the same matter in court over and over again as the omitted items were severally disposed of. The plaintiff should have waited until the mechanic's lien cases had been finally adjudicated, or, had he seen fit, he might have waived all his rights against the defendant as to the three items omitted by the architect, or, with the acquiescence of the defendant, he might have waived the submission of those items; but he did none of these things. We must take the case as we find it, and it is clear that the award was not final; hence it was not ripe to be sued upon and should have been excluded.

This litigation was here before (223 Pa. 36), and while there is nothing to show that the parties at that time mutually agreed to disregard the award, it appears from the report that the then counsel for the plaintiff conducted his case along different lines from those pursued at the last trial. Speaking by Mr. Justice POTTER we said: "Under the theory upon which the cause was tried, the important question which lay at the threshold of the inquiry was whether the plaintiff had failed to furnish sufficient workmen and proper material for the erection of the house, and whether he had prosecuted the work with due diligence." In the trial now under review the plaintiff

proceeded upon the theory that the architect had passed upon those points and that his decision was final and conclusive. The contract provides: "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or materials of the proper quality, or fail in any respect to prosecute the work with promptness or diligence or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure being certified by the architect, . . . . and, if the architect should certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall be at liberty to terminate the employment of the contractor for said work and to enter upon the premises . . . . and . . . . finish the work. . . . The expense incurred by the owner and any damage incurred through such default, shall be audited and certified by the architect whose certificate thereof shall be conclusive upon the parties and binding without exception or appeal." Thus the architect was made the arbiter as to the neglect or refusal to proceed with the work, and also to decide whether or not such neglect was sufficient ground for the termination of the contractor's employment; he did so certify, and the plaintiff, by the unequivocal act of going upon the premises and taking possession, put an end to the employment. The contract required no special form of notice to terminate the employment, and the fact that the plaintiff had previously given notice to the defendant that "I will deem it my privilege to provide such labor and material as may be necessary, under the terms and provisions of the contract," instead of saying that he intended to put an end to the employment, fell far short of showing an election not to terminate.

If the contract be regarded as a whole it is apparent that the parties selected the architect as the one to whose final decision they were willing to submit both the preliminary question of the contractor's default and the ultimate one of the determination of the account between them; and under our cases that is a bar to a common-law action

(Hostetter v. Pittsburg, 107 Pa. 419); the fact that the architect was referred to as the agent of the owner; or that the defendant did not see fit to present his evidence, would not make any difference in this respect: Kennedy v. Poor, 151 Pa. 472; English v. Wilmerding Boro. School Dist., 165 Pa. 21. So long as the architect acted independently without fraudulent collusion with the owner, his decision was final in all matters within the scope of his authority under the contract. "Although an award, like a judgment, may be impeached for fraud, yet the fraud must be actual and not constructive. Partiality and some improper conduct on the part of the arbitrator in making the award would not impeach it, unless the party benefited thereby be implicated in the misconduct. General allegations of fraud without stating the facts which constitute them are not sufficient:" Hostetter v. Pittsburg, supra; Com. v. Pittsburg, 206 Pa. 379. The defendant's attempt to attack the integrity of the award did not amount to more than a general allegation of fraud. Many of his offers of evidence contained no facts at all, and those stated in the other offers, if proved, were not sufficient to justify an inference of fraud of the character required to be shown in order to avoid such an award. An offer to show fraud should indicate the facts upon which the charge is predicated, for fraud is largely a conclusion of law from facts stated, and it must be made clear to the mind of the court that, the inferences being drawn in favor of the party making the offer, the facts, if believed, would be sufficient to sustain such a finding. We cannot say that the court below committed error in refusing so to view the offers of the defendant.

As to one item awarded the plaintiff we feel that the architect exceeded the scope of the submission. The twenty-third and twenty-fourth assignments of error relate to the item of $1,070.14, the rental value of the house, allowed as damages for 217 days' delay; these assignments should have been sustained. The plaintiff might have held the defendant to the completion of the work and

claimed the damages for delay allowed in the award. But as we construe the contract it did not contemplate the payment of such damages in the event of the dispossession of the contractor and the taking over of the property before the date allowed for completion: Crawford et al. v. Becker, 13 Hun, 375. Although we recognize the well-established rule that the award of an architect, in matters by contract expressly made subject to his decision, will not be disturbed, yet we have laid it down that "the rule should not at all apply beyond the express covenants of the contracting parties:" Hunn v. Pennsylvania Institution for the Instruction of the Blind, 221 Pa. 403, and that "such an agreement is not to be extended by implication beyond its plain words:" Somerset Borough v. Ott, 207 Pa. 539; Chandley Bros. & Co. v. Cambridge Springs Boro., 200 Pa. 230; Murphy v. Orne, 185 Pa. 250.

We have gone into this case at some length in the hope of defining the rights of the parties so that the controversy may be brought to an end. It is not necessary to discuss the other assignments of error further than to say that the· item of $1,013.30, allowed W. H. Sims for supervising the completion of the building for the owner, was within the cognizance of the architect and his decision thereon is not subject to review. As before pointed out, the award sued upon was not final; but the agreement is in force, and should the architect make a valid award, the plaintiff's remedy is still open to him: Hamilton v. Hart, supra.

The third, twenty-third, twenty-fourth and the last two specifications are sustained. The judgment is reversed, without prejudice.