445 A.2d 758

**PARKING UNLIMITED, INC., a Corporation,**

v.

**MONSOUR MEDICAL FOUNDATION, a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 1981.

Filed May 14, 1982.

290

John R. Friedlander, Pittsburgh, for appellant.

B. Patrick Costello, Greensburg, for appellee.

Before PRICE, BROSKY and MONTEMURO, JJ.

PRICE, Judge:

The issues presented for our consideration in this appeal are whether the court below erred in entering an order pursuant to a common law arbitration award and in refusing appellant permission to take depositions of additional witnesses.

The parties to the instant action entered into a written building contract[1] by which appellee, Parking Unlimited, Incorporated, agreed to furnish architectural and engineering services in connection with the construction of a parking garage and office building for appellant, Monsour Medical Foundation. The contract called for specified payments upon the performance of certain phases of the engineering work.[2] It also expressly provided for the arbitration of disputes arising out of the contract in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. When appellee sought payment of the balance of the contract price which it claimed to be due, appellant denied any liability because of appellee's allegedly unsatisfactory performance. The parties then submitted the entire controversy for decision by a panel of arbitrators.[3] Appellee averred full compliance with the contract and completion of its obligations thereunder and claimed $101,-

1. The agreement was a standard form contract used by owners and engineers for the rendering of professional services (November 1972 Edition, National Society of Professional Engineers).

2. The phases enumerated in the contract were the following: (1) schematic planning phase; (2) preliminary design phase; (3) final design phase; (4) bidding or negotiating phase; and (5) construction phase.

3. Appellee initially filed a complaint in assumpsit against appellant in the Court of Common Pleas of Westmoreland County. Appellant answered by filing preliminary objections, alleging that the dispute was subject to arbitration.

829, with interest, as the unpaid balance. Appellant, on the other hand, claimed that the set of plans and specifications prepared by appellee was valueless.

The arbitrators conducted a hearing on September 19, 1979.[4] On October 18, 1979, the arbitrators announced an award in favor of appellee for the total amount claimed. Thereafter, appellee filed a petition to confirm the arbitrators' award. Appellant answered that the contract was void *ab initio* since professional services cannot be performed by a business corporation and, by way of new matter, asserted that the arbitration award was a nullity since after-discovered evidence established that false testimony was given at the proceeding. At the same time, appellant also moved for discovery since the averments of new matter set forth in the answer were *dehors* the record. Appellee's reply to new matter denied that it had engaged in any improper activity, and asserted that the arbitrators made their award after a full and fair hearing. On May 2, 1980, the Honorable Richard E. McCormick entered an order, in which the Honorable Gilfert M. Mihalich concurred, granting appellee's petition to confirm the award and denying appellant's request for additional discovery. This appeal followed.

In arbitration agreements under common law, the arbitrator is the final judge of both law and fact, and there is no authority which sanctions the vacatur of his decision for a mistake of either.[5] *Allstate Insurance Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972); *Harwitz v. Selas Corp.*

---

4. By agreement of both parties, there was no transcription of the proceeding. Therefore, in referring to the arbitration hearing, this court has relied on those portions of the printed record which remain uncontroverted.

5. While the Act of April 25, 1927, P.L. 381, No. 248, § 1 *et seq.*, provided a more efficient method of enforcing arbitration agreements and awards than was provided at common law, it did not abolish common law arbitration. The rule has been reiterated in many decisions that the provisions of the Act of 1927 are applicable only if the arbitration agreement specifically refers to the Act or there is other evidence, subsequent to the agreement, that the parties expressly or implicitly agreed that it should apply. *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 383 A.2d 189 (1978).

*of America*, 406 Pa. 539, 178 A.2d 617 (1962). Every presumption is in favor of the award's validity. *Reinhart v. State Automobile Insurance Association*, 242 Pa.Superior Ct. 18, 363 A.2d 1138 (1976). Nevertheless, a party can succeed in having an arbitrator's award vacated if it is alleged and proven, by clear, precise and convincing evidence, that he was "denied a hearing or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable or unconscionable finding." *International Brotherhood of Firemen and Oilers, AFL–CIO Local 1201 v. School District of Philadelphia*, 465 Pa. 356, 350 A.2d 804 (1976), *quoting Nationwide Mutual Insurance Co. v. Barbera*, 443 Pa. 93, 95, 277 A.2d 821, 823 (1971). *See* 42 Pa.C.S.A. § 7341.

In the instant case, appellant alleges neither misconduct, corruption, nor denial of a hearing. Rather, appellant seeks to overturn the award by alleging that because appellee, as a business corporation,[6] contracted to perform professional services in violation of the Professional Corporation Law, Act of July 9, 1970, P.L. 461, No. 160, § 2(4), the arbitrators' decision permitting recovery for its services amounted to such a capricious disregard of the law as to constitute an "other irregularity." [7] We disagree.

While the arbitrators rendered their decision without opinion, it should be noted that their determination was delayed until both parties had an opportunity to brief the question

6. Section 10(a) of the Professional Corporation Law of July 9, 1970, P.L. 461, No. 160, unambiguously states that shares in a professional corporation can be issued only to a licensed professional. 15 P.S. § 2910(a) (Supp. 1980–81). At the hearing, it was disclosed for the first time that Douglas N. Howe, President of Parking Unlimited, Inc., and signatory of the contract here in dispute, was a minority shareholder of appellee-corporation and was neither a registered architect nor an engineer.

7. In *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 116, 299 A.2d 585, 589 (1973), the supreme court stated that the phrase "other irregularity" imports "such bad faith, ignorance of the law and indifference to the justice of the result" as would cause a court to vacate an arbitration award.

whether appellee, as a business corporation, should be barred from recovery upon the contract.[8] In rebuttal to appellant's claim that the performance of engineering services is reserved exclusively for professional corporations or individual licensees, appellee adverted to the Professional Engineers Registration Law, Act of May 23, 1945, P.L. 913, § 6 (prior to the 1979 amendment), which deals specifically with firms and corporations. In pertinent part, that section provides:

> The practice of engineering, and of surveying being the function of an individual or of individuals working in concerted effort, it shall be unlawful for any firm or corporation to engage in such practice, or to offer to practice, or to assume, use or advertise any title or description conveying the impression that such firm or corporation is engaged or is offering to practice such profession, *unless* the directing heads and employees of such firm or corporation in responsible charge of its activities in the practice of such profession are licensed and registered in conformity with the requirements of this Act, and whose name and seal shall be stamped on all plans, specifications, plates and reports issued by such firm or corporation.

63 P.S. § 153 (1968) (emphasis added). Appellee argued that since it was and is complying with the law concerning registration,[9] the intention of the legislature was that it should be entitled to recover pursuant to section six.

8. That this was the controlling legal issue addressed by the arbitrators is also demonstrated by the parties' agreement that it was the only controverted element in the case other than the question of appellee's satisfactory performance under the terms of the contract. *Cf. Reinhart v. State Auto. Ins. Ass'n.*, 242 Pa.Superior Ct. 18, 363 A.2d 1138 (1976) (if arbitrators do not clearly delineate bases of their award, and petition and answer *fail to agree* upon factual and legal bases thereof, the party who excepts must produce conclusive evidence of the issues decided).

9. Although Douglas N. Howe was neither a registered engineer nor architect, he testified at the arbitration hearing that a registered engineer who was in the employ of appellee-corporation (and a stockholder therein) was the individual who signed and placed his seal on the submitted plans. Mr. Howe also testified that there was

In these circumstances, we do not believe that the award in favor of appellee meets the "other irregularity" criterion articulated in *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973) and its progeny. Although there is no doubt that appellee, as a business corporation, contracted to provide engineering services, the arbitrators decided in good faith that the public policy declared by the legislature in section six of the Professional Engineers Registration Law expressly permits recovery for the services appellee rendered. *See* 15 P.S. § 2905 (Supp. 1980–81). Clearly, we cannot say that this conclusion evidences an indifference to the governing law sufficient for vacating an arbitration decision.

We now turn to appellant's allegation that the suppression by appellee of certain facts in the proceeding was tantamount to fraud and, concomitantly, that the trial court abused its discretion in denying appellant's motion for discovery. Appellant asserts that, after the arbitration award was entered, it discovered that Mulach Steel Corporation [10] [Mulach] had performed a substantial portion of the work for which appellee now seeks recovery and that appellee would have received an undisclosed kickback of $6000 in the event Mulach was awarded the final steel contract.[11] Appellant thus argues that the president of appellee-corporation

another stockholder who was a registered architect employed by appellee.

10. Originally, appellant alleged that Mulach Parking Systems, Inc., a division of Mulach Steel Corporation, had actually prepared the work for the construction project. This allegation was corrected, however, when appellant subsequently learned that Mulach Parking Systems, Inc., did not exist at the time of the instant dispute.

11. Appellant claims that it uncovered this information by sheer fortuity when its new engineer for the parking facility and office building was talking with a person employed by Mulach. As can best be gleaned from the trial court's opinion, the trial court ignored these allegations of newly-discovered evidence on the ground that appellant did not state specifically how and when the information was acquired. *See* slip op. at 6. *See generally Hornick v. Bethlehem Mines Corp.*, 310 Pa. 225, 165 A. 36 (1933) (allegation that evidence was discovered "since the trial" is too indefinite); 6A Standard Pennsylvania Practice 154 (1960).

committed perjury at the arbitration hearing when he failed to disclose these facts in response to questioning concerning the right of Parking Unlimited to recover for its services. This argument is patently spurious.

An offer to show fraud in attacking an arbitration award should indicate facts which, *if proved*, would be sufficient to sustain such a finding. *Kann v. Bennett*, 234 Pa. 12, 82 A. 1111 (1912). While it is true that appellee contracted with Mulach to provide certain engineering designs for which it had been hired by appellant,[12] there was nothing in the parties' agreement which required appellee to furnish, or appellant to approve, the names of any subcontractors that might participate in the design work. Indeed, after reviewing the contract and its legal effect as a whole, it is fair to say that appellee was an independent contractor, free from the control of appellant with respect to the means of performing the work to be done.[13] *Cf. Hammermill*

12. Contrary to the scenario depicted by appellant in which Parking Unlimited masqueraded as an independent engineering firm, the record shows that these designs comprised only a small portion of the work appellee was required to do in connection with the project. The agreement between appellee and Mulach, as well as affidavits filed by Douglas N. Howe and Charles Henry Churches (the registered engineer who executed the plans submitted by Mulach), clearly indicate that Mulach was hired exclusively for the foundation and structural steel work. All of the other drawings and work, including the site, elevation, plumbing, and electrical plans were prepared by the registered architect and engineer employed by appellee. Any remaining doubt whether Mulach performed a significant portion of the work involved is dispelled by the fact that the $11,000 to be paid Mulach in exchange for its structural steel services represented no more than 9.2% of the total contract price ($118,458.00) between appellee and appellant.

13. While there exist no uniform criteria for determining whether one is an independent contractor or an employee, certain guidelines have been established:

"Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time."

*Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968) (judgment on the pleadings reversed where trial court predicated its decision on ground that engineering and construction firm was an employee as opposed to an independent contractor). *See generally* C. Dunham & R. Young, Contracts, Specifications, and Law for Engineers 111, 384–85 (2d ed. 1971). *See also Mackay v. Benjamin Franklin R. & H. Co.*, 288 Pa. 207, 135 A. 613 (1927). Thus, Mulach's engagement as an engineering consultant was a normal and permissible incident to the parties' contract and we fail to see how any omission in this regard could have influenced, or is even material to, the arbitrators' decision that Parking Unlimited satisfactorily performed under its terms.[14]

No discussion is necessary as to appellant's complaint that Mulach and Parking Unlimited agreed upon a secret $6000 "kickback" except to state that their subcontract delineated two alternative methods of compensation for the services to be performed by Mulach: $5000 if it was awarded the final steel work, or one percent of the construction cost of the work it had prepared (in this case, $11,000) if the final steel work was awarded to another contractor. In ordinary parlance, this was merely a discount provision and, as appellee significantly points out, there were fifteen contractors who bid on this phase of the project with no assurance to any, including Mulach, that it would be the successful bidder. In such circumstances, we cannot say that Mulach acted in collusion with appellee.[15]

*Hammermill Paper Co. v. Rust Eng. Co.*, 430 Pa. 365, 370, 243 A.2d 389, 391 (1968), *quoting, Stepp v. Renn*, 184 Pa.Superior Ct. 634, 637, 135 A.2d 794, 796 (1957). *See* Restatement (Second) of Agency § 220(2) (1958).

**14.** Indeed, appellant concedes that there was nothing wrong with Mulach preparing plans and specifications, "providing it disclosed its affiliation, interest and lack of independence." Brief for Appellant at 13.

**15.** In view of our express holding that the arbitration award was not the result of perjured testimony, we do not reach the merits of that part of the trial court's order denying appellant's motion to compel discovery. Rather, it is sufficient to state that there was no abuse of discretion by the trial court in refusing to allow further testimony

For all of the foregoing reasons, the order granting appellee's petition to confirm the arbitrators' award and denying appellant's request for additional discovery is affirmed.

where the alleged after-discovered evidence did not even satisfy the general test for fraud in setting aside an arbitration award.