Milton FINE and Edward A. Perlow, Petitioners,

v.

BEAR, STEARNS & CO., INC., and Kenneth Shashoua, Respondents.

No. 89 Civ. 8629 (JES).

United States District Court, S.D. New York.

May 30, 1991.

---

Dickie McCamey & Chilcote, P.C., Pittsburgh, Pa. (George E. McGrann, David J. Armstrong, David F. Horan, Burke, Horan & Macri, New York City, of counsel).

Parker Chapin Flattau & Klimpf, New York City (Katherine C. Ash, of counsel).

MEMORANDUM OPINION
AND ORDER

SPRIZZO, District Judge:

Petitioners Milton Fine and Edward A. Perlow [1] move pursuant to Section 10 of

---

**1.** Edward A. Perlow died shortly after the institution of these proceedings to vacate the arbitration award.

the Federal Arbitration Act, 9 U.S.C. § 10, to vacate an arbitration award issued on March 6, 1989. Respondent Bear, Stearns & Co., Inc., ("Bear Stearns"), cross-moves for summary judgment confirming the award and for sanctions. For the reasons that follow, petitioners' motion to vacate is denied and respondent's cross-motion seeking confirmation of the award is granted. The cross-motion for sanctions is denied.

## BACKGROUND

The evidence introduced at the arbitration established the following facts. In late 1985 or early 1986, petitioners opened an arbitrage account with Rooney Pace, Inc. ("Rooney Pace"), a broker-dealer. *See* Stipulation of Undisputed Facts ("Stip") at ¶ 4 (I Appendix ("App.") Ex. C). The Rooney Pace representative on their account was Kenneth Shashoua. *See id.* The funds were held by Bear Stearns, which as a "clearing broker" had the responsibility of clearing those funds upon appropriate instructions.[2] *See id.* at ¶ 5.

In connection with this account, petitioners executed a "Customer Agreement" with Bear Stearns, which provided in part as follows:

> 8. *Clearance Accounts.* If Bear Stearns carries your account as clearing broker by arrangement with another broker through whose courtesy your account has been introduced, then unless Bear Stearns receives from you a written notice to the contrary, Bear Stearns shall accept from such other broker, without any inquiry or investigation by it (i) orders for the purchase or sale in account of securities and other property on margin or otherwise, and (ii) any other instructions concerning said account. You understand that Bear Stearns shall have no responsibility or liability to you for any acts or omissions of such other broker, its officers, employees or agents.

I App.Ex. C(3). Petitioners also received a "Correspondent Allocation of Responsibility Letter," which set forth the allocation of responsibilities between the petitioners' introducing firm, Rooney Pace, and the respondent. Although one of the respondent's responsibilities was "safeguarding funds and securities," the responsibilities for supervising and monitoring the account and the transactions made in connection therewith were placed squarely upon Rooney Pace. *See* I App.Ex. C(3). Moreover, Rooney Pace was also responsible for "selecting, investigating, training and supervising all personnel who open, approve or authorize transactions in your [petitioners'] account." *Id.*

On or about September 30, 1986, without the approval of the petitioners, Bear Stearns, acting upon what purported to be the instructions of petitioners, executed a transfer of $675,000 from the petitioners' account to the account of an unrelated foreign corporation with a mailing address in Switzerland. *See* Stip. at ¶ 10. Respondent's statement of account, *see* I App.Ex. C(12), and marginal activity report, *see* Supplemental Appendix of Respondent ("Supp. App.") Ex. K, reflect the September transaction as an "LOA" or a letter of authorization. *See also* Tr. at 77. Testimony at the arbitration hearing established that Rooney Pace's representative, Shashoua, forged petitioners' signatures on the documents which authorized the aforementioned transfer. *See* Transcript of Arbitration Proceeding ("Tr.") at 202, 227 (I App.Ex. D). A copy of that letter, which was obtained from Shashoua, was also admitted into evidence at the arbitration. *See* I App.Ex. C(2); Tr. 82–85. However, respondent was unable to locate the original letter of authorization in its files. *See* Tr. at 186–87.

In October of 1986 Bear Stearns received a letter, also forged by Shashoua, changing the address on petitioners' account so that all account information would go to Shash-

---

2. A clearing broker provides operational services for an introducing broker such as Rooney Pace. These services include comparing and settling transactions, producing and distributing confirmations and statements of account, maintaining the customer's account, and processing dividends and proxy materials. *See* Transcript of Arbitration Proceeding ("Tr.") at 378–79, 493–94 (I App.Ex. D).

oua's home address.[3] *See* Stip. ¶ 12; Tr. at 202–05, 226–27. As a consequence, Fine and Perlow did not receive monthly statements of account which reflected the unauthorized transactions and transfers from their account.[4] Thereafter, Shashoua stole another $50,000 from petitioners' account by forging a second authorization for transfer on or about December 17, 1986.[5] *See* Stip. at ¶¶ 19–20. The parties stipulated to the identity and authenticity of the letter of authorization for this transaction which Bear Stearns produced. *See* Stip. at ¶¶ 19–20 & Ex. 9 (I App.Ex. C(9)).

Petitioners filed a claim with the New York Stock Exchange against Bear Stearns alleging breach of contract, negligence, conversion, and racketeering violations, 18 U.S.C. § 1961 (1988), in connection with the unauthorized transfers. After three days of arbitration hearings, the arbitration panel dismissed the claim in all respects.

## DISCUSSION

Petitioners contend that the award must be vacated for the following reasons: (1) the arbitrators acted in manifest disregard of the law, *see Wilko v. Swan*, 346 U.S. 427, 436–437, 74 S.Ct. 182, 187–188, 98 L.Ed. 168 (1953); (2) the arbitration award is irrational because it is not supported by any evidence, *see Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1134–35 (3d Cir.1972); and (3) certain evidentiary rulings made by the arbitration panel constituted a "refusal to hear evidence pertinent and material to the controversy" under 9 U.S.C. § 10(c).

■ It is well-settled that a court's power to vacate an arbitration award must be extremely limited because an overly expansive judicial review of arbitration awards would undermine the litigation efficiencies which arbitration seeks to achieve. *See Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.*, 659 F.Supp. 1346, 1350–51 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1117 (2d Cir.1988); *Tinaway v. Merrill Lynch & Co.*, 658 F.Supp. 576, 578 (S.D.N.Y.1987); *see also Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 701, 703–04 (2d Cir.1978). Tested by that standard, the award here must be confirmed.

■ Petitioners' argument that the arbitration panel "manifestly disregarded the law" must be rejected. "Manifest disregard of the law" by arbitrators is a judicially created standard for vacating an arbitration award, *see Carte Blanche (Singapore) Pte. Ltd. v. Carte Blanche Int'l, Inc.*, 888 F.2d 260, 265 (2nd Cir.1989) (quoting *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986)), which is applicable only where the law alleged to have been disregarded is "well defined, explicit, and clearly applicable," so that the error was "capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch, supra*, 808 F.2d at 933–934.

■ Petitioners allege that the arbitration panel disregarded: (1) New York Stock Exchange Rule 405 which requires members to use "due diligence to learn the essential facts" concerning customers and

---

**3.** Although the original of this document could not be found by Bear Stearns, the parties stipulated to its contents. *See* Stip. ¶ 12.

**4.** Bear Stearns' change of address procedures at the times relevant herein included the following: (1) upon receiving a written change of address request Bear Stearns changed the address; (2) it then sent a verification form to the old address; and (3) if the form was returned, the new address was checked against the verification card. *See* Tr. 279–86. The record indicates that this procedure was followed and that on November 1, 1986, Bear Stearns received a copy of what purported to be a completed verification of address change form. *See* Stip. at

¶¶ 16–18 & Exs. 10–11 (I App.Ex. C & C(10)–(11)). However, that procedure did not require a verification of the signatures on the change of address form. *See* Tr. at 286.

**5.** Kenneth Shashoua pled guilty to two counts of mail fraud and was sentenced to a term of probation and community service as a result of these transactions. *See United States v. Shashoua*, 87 Cr. 475 (CSH) (S.D.N.Y.1987). He was also ordered to make restitution to Fine and Perlow; however, Perlow testified at the arbitration hearing that he had not done so. *See* Tr. at 153.

orders and (2) New York Stock Exchange practices regarding the maintenance of records and the transfer of funds to unknown and unrelated accounts. In making that argument petitioners rely upon the testimony of an expert witness, Daniel Steinberg, who stated that Bear Stearns had a fiduciary responsibility to safeguard Fine and Perlows' funds, *see* Tr. at 496–98, and that, in making the transfers from their account, Bear Stearns acted in total disregard of the rules and regulations relating to internal memoranda and good business practice. *See* Tr. at 507.

However, John Gabriel, another expert witness who testified on behalf of Bear Stearns, testified that New York Stock Exchange Rule 382 states that the clearing agreement determines the responsibilities assumed by the two parties to the agreement, *see* Tr. at 381, 408, and that in this case the clearing agreement placed account and supervisory obligations, including the Rule 405 "knowing your customer responsibilities," on the introducing broker, Rooney Pace. *See* Tr. at 381–383. He therefore concluded that Bear Stearns had no duty to investigate the authorization letters it received. *See id.* at 387–89, 396–97. Moreover, Gabriel also testified that the procedures used by Bear Stearns in executing instructions received from its introducing brokers and their employees were reasonable and in accord with industry standards. *See* Tr. at 383–389, 395–396. Given the conflicting testimony on this issue, the Court cannot reasonably conclude that the arbitration panel "manifestly disregarded" applicable law by crediting one expert opinion rather than the other. *See Carte Blanche, supra,* 888 F.2d at 265 (quoting *Merrill Lynch, supra,* 808 F.2d at 933–34). This is especially so since the customer agreement with Bear Stearns supported Gabriel's testimony. *See* I App.Ex. C(3).

▆▆▆ Petitioners also contend that the record contains no evidence to support respondents' affirmative defense that it relied on instructions received from Shashoua in effecting the wrongful transactions. Although an arbitration award may be vacated if it lacks any factual support, *see Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., Ltd.,* 868 F.2d 52, 56 (3d Cir.1989); *Storer Broadcasting Co. v. American Federation of Television & Radio Artists,* 600 F.2d 45, 47–48 (6th Cir. 1979); *Swift, supra,* 466 F.2d at 1134–35; *Amoco Overseas Oil Co. v. Astir Navigation Co.,* 490 F.Supp. 32, 37 (S.D.N.Y.1979), the record here reflects that Shashoua admitted to one of petitioners' attorneys, Rodney Fink, that he sent the forged letters to Bear Stearns, *see* Tr. at 202, 220, 226–27; that respondent's business records indicate that respondents received instructions to transfer the funds of Fine and Perlow on or about September 30, 1986, *see* I App.Ex. C(12); Supp.App.Ex. K; and that the normal business practice of Bear Stearns would have required a letter of authorization before making those transfers. *See* Tr. at 333, 335–36. Moreover, the parties stipulated that Bear Stearns received a request to change a mailing address in October 1986 and received a letter of authorization for the $50,000 transfer on December 16, 1986. *See* Stip. ¶¶ 12, 20. In the face of that evidence, there can be no merit to petitioners' claim that the award was irrational in that it lacked any factual support.[6]

▆▆▆ Finally, petitioners contend that the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy. *See* 9 U.S.C. § 10(c). However, as the Court noted in *Bell Aerospace Co. v. Local 516,* 500 F.2d 921 (2d Cir.1974), an arbitrator need not follow all of the "niceties" observed by the

---

**6.** The fact that Bear Stearns could not locate the original documents requesting the unauthorized transfer in September 1986 and the change of address does not support petitioners' claim that there was *no evidence* to support Bear Stearns' contention that it did in fact receive those documents. Indeed, as previously noted, the record is replete with evidence establishing that Bear Stearns effected the transfers on the basis

of the forged authorizations referred to above. It follows that even accepting as true the testimony of petitioners' expert that Bear Stearns was in violation of SEC regulations 17(a)(3) and 17(a)(4) in not maintaining those documents, that circumstance has little if any bearing on petitioners' claim that there was no evidence supporting the arbitration award.

federal courts in making evidentiary rulings, but need only grant the parties a fundamentally fair hearing. *Id.* at 923. Since the arbitration hearing here met that standard, petitioners' claim must be rejected.

■ Petitioners argue that they were not given the opportunity to obtain documents or records as provided by the New York Stock Exchange Rules. Specifically, petitioners argue that because the arbitrators failed to order Bear Stearns to search for and produce the original documentation for the letter of authorization relating to the $675,000 transaction, or the October 23, 1986 letter relating to the change of address, the arbitrators failed to consider pertinent and material evidence. However, the arbitrators did in fact take into account Bear Stearns' concession that it could not locate those original documents in deciding the issue of whether Bear Stearns had in fact received those documents. *See* Tr. at 186–87.

■ Petitioners also complain that Bear Stearns was not required to produce "journal entries" relating to the transfer of funds,[7] and that it failed to comply with the Panel's order to produce pages from its internal procedures manuals relating to change of address and letters of authorization. However, since the petitioners had already presented other evidence regarding Bear Stearns' practices and procedures relating to transferring funds, *see* Tr. 324–44, the "journal entries" for this transfer at best would have been cumulative to evidence already in the record. *See* Tr. at 302–303. Moreover, the record indicates that Bear Stearns represented to the Panel that it had produced all pages from their manuals responsive to the Panel's order, *see* Tr. at 197, 265, 370, and petitioners' counsel stated at the arbitration that he

was satisfied with that representation. *See id.* at 370.

■ In sum, petitioners' claim that the hearing was unfair amounts to no more than a disagreement with the arbitrators rulings on the weight and relevancy of evidence. However, it is well-settled that "the arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding." *Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901,* 763 F.2d 34, 39 (1st Cir.1985). For the reasons set forth above, the Court finds no abuse of discretion in the rulings made, and thus no basis for the claim that the hearing was unfair.

■ Moreover, even if the Panel erroneously excluded evidence, this would not in itself provide a basis for vacating the award absent substantial harm. *Hunt v. Mobil Oil Corp.,* 654 F.Supp. 1487, 1512 (S.D.N.Y.1987) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir.), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968)). No such harm occurred here. The Court has reviewed the entire record, and concludes that the arbitrators' decision is well supported and well within the properly exercised broad discretion conferred upon the arbitrators.[8]

Bear Stearns' cross-motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied. Petitioner's claims, although ultimately unsuccessful, are nevertheless colorable. Moreover, petitioner has submitted an affidavit which demonstrates an adequate investigation into the factual and legal basis of the claims. *See* Affidavit of David J. Armstrong, Esq. (April 12, 1990).

---

**7.** The "journal entries" were keypunch instruction forms which were completed when Bear Stearns received a letter of authorization and were forwarded to two supervisors, together with the letter of authorization, for approval. *See* Tr. 330–31. They would later be delivered to another Bear Stearns department for entry onto Bear Stearns' computerized books and records. *See id.*

**8.** To the extent that petitioners' argument can be construed to include a claim that the arbitrators were biased because they were professionals in the securities industry, the Court rejects it as bereft of factual support.

## CONCLUSION

For the reasons set forth above, the petitioners' motion to vacate is denied and the respondent's cross-motion seeking confirmation of the award is granted. The cross-motion for sanctions is denied. The arbitration award is confirmed. The Clerk of the Court shall enter judgment accordingly and close the above-captioned action.

IT IS SO ORDERED.