660 A.2d 1341

**DUQUESNE LIGHT COMPANY, Appellant,**

v.

**NEW WARWICK MINING COMPANY.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1995.

Filed June 12, 1995.

54

Edmund M. Carney, Pittsburgh, for appellant.

Raymond G. McLaughlin, Pittsburgh, for appellee.

Before CAVANAUGH, JOHNSON and SAYLOR, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment entered in favor of appellee New Warwick Mining Company ("New Warwick") and against appellant Duquesne Light Company ("Duquesne"), following the trial court's denial of Duquesne's petition to vacate or modify an arbitration award. After careful review, and for the reasons which follow, we affirm.

In 1990, the parties entered into two agreements which required New Warwick to supply coal to Duquesne. Both of these agreements provided for arbitration of any disputes arising between the parties. Subsequently, a dispute arose over Duquesne's obligation to purchase in excess of 700,000 tons of coal from New Warwick during 1993, and the matter was submitted to arbitration. On February 16, 1994, a panel of three arbitrators rendered a decision and award, finding, *inter alia*, that Duquesne is obligated, under the agreements between the parties, to accept and pay for 737,000 tons of coal annually from New Warwick; and that Duquesne owed New Warwick $302,290 for Duquesne's breach in accepting less than 737,000 tons of coal during 1993. Duquesne then filed a petition to vacate or modify the arbitration award. In response, New Warwick filed both an answer and preliminary objections to Duquesne's petition. The trial court subsequently denied Duquesne's petition to vacate and overruled New Warwick's preliminary objections. Judgment was entered. This appeal followed.

Before examining the merits of this appeal, we will first address the preliminary question of whether the present dispute is governed by the provisions of the Federal Arbitration Act,[1] or by Pennsylvania law.[2] This question was not decided by the arbitration panel. The trial court also did not decide this question. The court simply concluded, in disposing of Duquesne's motion to vacate, that under either federal or state law, Duquesne was not entitled to relief. Duquesne contends that federal law applies because the transactions between the parties involve interstate commerce. New Warwick, however, maintains that the record does not support the conclusion that the transactions between the parties involve interstate commerce, and that, in any event, this Court may not, in the first instance, make the determination of whether or not federal law is applicable in this case.

1. *See* 9 U.S.C. § 1 *et seq.*
2. *See* 42 Pa.C.S.A. § 7341 (Common Law Arbitration).

In order for the provisions of the Federal Arbitration Act to apply, the contract at issue must evidence a transaction in or relating to interstate commerce. *Emlenton Area Mun. Authority v. Miles,* 378 Pa.Super. 303, 306 n. 2, 548 A.2d 623, 625 n. 2 (1988). This inquiry involves a factual determination. *Id.* Where the factfinder makes no such findings, and otherwise fails to indicate whether it is applying federal or state law to the arbitration issue, an appellate court is prohibited from determining the applicability of federal law. *Id.* In the present case, the arbitration panel did not decide this issue, and it appears from the record that it was not even presented to or considered by the panel. In these circumstances, we could remand for a specific finding of fact on this point. *See Emlenton, supra.* However, because we agree with the trial court that Duquesne is not entitled to relief under either federal or state law, remand for such a finding is unnecessary. *Id.* We will thus undertake an examination of Duquesne's claims in light of both federal and state law.

We begin by examining Duquesne's argument under federal law. The Federal Arbitration Act presumes that reviewing courts will confirm arbitration awards and that a court's review of the arbitration process will be severely limited. *Robbins v. Day,* 954 F.2d 679 (11th Cir.1992). Under the Act, a reviewing court may vacate the arbitrators' award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An award will not, however, be vacated under § 10 solely on the basis of an error of law or interpretation; but rather, requires something more, such as misconduct, on the part of the arbitrators or the parties, which pertains to the proceedings. *Robbins, supra.*

In addition to § 10, the federal courts have recognized several limited instances where an arbitration award will be vacated. *Fine v. Bear, Stearns & Co., Inc.,* 765 F.Supp. 824, 827 (S.D.N.Y.1991). There is not uniform agreement, however, among the federal circuits on these various standards for vacatur, or on how they are to be applied. *Robbins, supra,*

954 F.2d 679. Here, Duquesne contends that the arbitrators either exceeded or improperly exercised their powers in violation of § 10(a)(4); and also that their decision was in manifest disregard of the law and was fundamentally irrational.

■■■■ Under federal caselaw, an award may be vacated or modified if it was rendered in manifest disregard of the law, *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1958), or if the award is fundamentally irrational, *Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125 (3d Cir.1972). In order to vacate the award due to alleged "manifest disregard of the law" it must be shown that the law alleged to have been disregarded is well-defined, explicit and clearly applicable, such that the error is capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. *Fine, supra,* at 765 F.Supp. 824. To demonstrate that the award was "fundamentally irrational" it must be shown that the award was based on reasoning so palpably faulty that no judge could ever conceivably have made such a ruling. *Local 1466, International Brotherhood of Electrical Workers, AFL–CIO v. Columbus & Southern Ohio Electric Co.*, 455 F.Supp. 471, 474 (S.D.Ohio 1978), *aff'd.*, 627 F.2d 1091 (6th Cir.1980).

Although we are presented with several standards of review, a single argument underlies Duquesne's contentions. Under the agreements between Duquesne and New Warwick, Duquesne was to receive a discount in the price of the coal when an amount in excess of 737,000 tons was supplied by New Warwick. Duquesne maintains that it had the absolute right to order between 737,000 and 775,000 tons of coal per year, and that the arbitrators should have based their damage calculations on Duquesne's right to order tonnage in this range, because the law of damages requires consideration of non-breaching alternatives which are available and which would limit the damages caused by a party's breach.[3] Accord-

3. More specifically, the upper range price discount would have brought the average contract price per ton of coal down to $27.54 at 760,000 tons or $24.80 at 775,000 tons. At either of these price figures, it would have been less than the average price of $29.16 at which New Warwick resold the excess coal to third parties. Thus, Duquesne

ing to Duquesne, however, the arbitrators failed to consider Duquesne's right to order in upper range and consequently failed to consider the corresponding discount. This omission by the arbitrators, Duquesne maintains, resulted in a fundamentally erroneous award, which should now be vacated.

Under the arbitration provision of the agreements between the parties, any disputes were to be submitted to a panel of three arbitrators. Each party had the right to choose one of the arbitrators, and the two arbitrators chosen by the parties would then choose the third. The arbitration panel which heard the present controversy, resolved the dispute in favor of New Warwick, with the arbitrator appointed by Duquesne dissenting from the majority's award. The majority did not issue an opinion explaining its rationale for the award. *See Robbins, supra,* 954 F.2d 679 (arbitrators are not required to explain award, and silence cannot be used as grounds for vacating the award). Duquesne, however, points to language in the brief decision issued by the majority, which it contends supports its position that it had the absolute right to purchase coal in the upper tonnage range. Duquesne contends that the majority improperly failed to consider both this right, and the corresponding discount Duquesne would receive for an order in the upper range, when the majority calculated the damage award. The language in the majority's decision which Duquesne relies on states the following:

> Duquesne Light Company is not obligated to accept and pay for tonnage between 737,000 and 775,000 from New Warwick Mining Company under the contracts. New Warwick Mining Company does not have the right under the contracts to sell annual tonnage from 737,000 to 775,000 to Duquesne Light Company.

To further support this position, Duquesne points to the dissent, prepared at its request, by the arbitrator which it

contends that using the upper range discount would have resulted in zero damages because New Warwick realized a greater return than it would have had there been no breach and the contract had been completed.

chose for the panel. This statement provides, in pertinent part, as follows:

> The Chairman apparently did not apply these basic principles of the law of damages because, he thought that the Panel was not asked the question concerning Duquesne's rights in the higher range of tonnage. But, of course, we were. Duquesne's and New Warwick's statements of the issue and answer both address the entire range. Secondly, the Majority has already ruled on New Warwick's *rights* and Duquesne's *obligations* concerning the 737,000 to 775,000 range. Only Duquesne's *rights* in that range remain unstated in the Majority's award, but, as stated, those rights are present as the Chairman himself so said to the other members of the Panel on two separate occasions.

■ After reviewing the record in this case, we find Duquesne's assertion to be fundamentally flawed. While we agree that the issue of the upper range discount was before the arbitrators, we do not agree that the majority believed that Duquesne had an absolute right to purchase coal in the upper range. From a fair reading of the majority's decision it is clear that it concluded that New Warwick did not have an absolute right to deliver coal in the upper range which Duquesne was then obligated to purchase. Although the majority's statement leaves open the possibility that Duquesne may have indeed had an absolute right to purchase coal in the upper range, the majority's statement also leaves open the possibility that the parties had corresponding rights and obligations (not rising to the level of an absolute right or obligation) regarding the delivery and purchase of tonnage in the upper range. Additionally, after reviewing the relevant provisions of the contracts between the parties, we find no clear indication as to their intent with regard to their respective rights and obligations concerning tonnage in the upper range. *See Sociedad Comercializadora v. Quizada,* 434 Pa.Super. 48, 641 A.2d 1193 (1993) (in any event, the intent of contracting parties is a question for the factfinder and not for a reviewing court).

██ Furthermore, with respect to the dissenting arbitrator's assertion that the Chairman believed that Duquesne had an absolute right to purchase tonnage in the upper range, we point out that neither the deliberations of the arbitrators nor the majority's rationale are matters of record. We cannot base our decision in this case upon hearsay and what amounts to nothing more than the speculation and conjecture of a party-appointed arbitrator. *See Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622 (1993) (it is black letter law that an appellate court may not consider anything which is not part of the record in disposing of the case). The record evidence simply does not bear out Duquesne's argument. Viewing the record before us, we can only conclude that the majority rejected Duquesne's argument that it had an absolute right to order coal in the upper range, and that it likewise rejected Duquesne's damage theory. As such, there is no basis upon which the majority's award can be vacated.

██ We will, nonetheless, assume *arguendo*, that Duquesne had an absolute right to order tonnage in the upper range. After reviewing Duquesne's damage theory, we must still conclude that Duquesne is not entitled to relief under federal law. First, we note that Duquesne has failed to point out any misconduct in the procedure or proceedings, and thus, is not eligible for relief under § 10(a)(4). *See Robbins, supra*, 954 F.2d 679. Furthermore, where the arbitrators have made a lump sum award and have given no rationale for it, at least one federal circuit has held that the award will be confirmed (and the judicially created grounds for vacatur will not be examined) if a rational ground for the arbitrators' decision can be inferred from the facts of the case. *Id.*

██ Here, the panel majority, after finding that Duquesne was obligated to purchase an additional 37,000 tons of coal from New Warwick, apparently performed a standard damage calculation in a case where a contracting party has breached. It appears the majority arrived at the damage award based on the difference between the price per ton agreed upon in the contract (for 737,000 tons) and the lower price per ton at

which New Warwick was forced to resell the coal after Duquesne's breach. As such, we find that a rational ground existed for the majority's award in view of the facts of this case.

Finally, we note that even under the judicially created "manifest disregard of the law" and "fundamentally irrational" standards, we find no grounds for vacating the award. With respect to the former standard, we cannot conclude that Duquesne's theory was so clearly applicable that the average arbitrator would have readily and instantly perceived that the majority's calculation was in error. Nor can we conclude, under the latter standard, that the majority's reasoning was so palpably faulty, that no judge could ever conceivably make such a ruling. Here, two of the three arbitrators agreed on the calculation of damages, and implicitly rejected Duquesne's theory; and a trial judge, in reviewing the arbitrators award, explicitly agreed with the panel majority's calculation. Moreover, the panel majority's award is based upon standard contract law remedies and is rationally related to the damage suffered (37,000 tons of coal not accepted by Duquesne) by New Warwick because of Duquesne's breach. As such, there is no basis under federal law for vacating the majority's award.

 We will now examine the validity of Duquesne's claim under state law. In Pennsylvania, the scope of judicial review of common law arbitration awards is very narrow. *Mellon v. Travelers Ins. Co.*, 267 Pa.Super. 191, 195, 406 A.2d 759, 761 (1979).

> In arbitration agreements under common law, the arbitrator is the final judge of both law and fact, and there is no authority which sanctions the vacatur of his decision for a mistake of either. [ ] *Allstate Insurance Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972); *Harwitz v. Selas Corp. of America*, 406 Pa. 539, 178 A.2d 617 (1962). Every presumption is in favor of the award's validity. *Reinhart v. State Automobile Insurance Association*, 242 Pa.Superior Ct. 18, 363 A.2d 1138 (1976). Nevertheless, a party can succeed in having an arbitrator's award vacated if it is alleged and

proven, by clear, precise and convincing evidence, that he was "denied a hearing or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable or unconscionable finding." *International Brotherhood of Firemen and Oilers, AFL–CIO Local 1201 v. School District of Philadelphia,* 465 Pa. 356, 350 A.2d 804 (1976), *quoting Nationwide Mutual Insurance Co. v. Barbera,* 443 Pa. 93, 95, 277 A.2d 821, 823 (1971). *See* 42 Pa.C.S.A. § 7341.

*Parking Unlimited v. Monsour Med. Foundation,* 299 Pa.Super. 289, 292–93, 445 A.2d 758, 760–61 (1982).

■ Duquesne contends that an irregularity occurred in the present case because the board of arbitrators, in calculating the damage award, failed to consider the discount Duquesne would receive for ordering tonnage in the upper range. Our courts have held that an irregularity refers to the process employed in reaching the result of the arbitration, and not to the result itself. *Chervenak, Keane & Co. v. Hotel Rittenhouse Assoc.,* 328 Pa.Super. 357, 362, 477 A.2d 482, 485 (1984). Moreover, an irregularity will not be found simply upon a showing that an incorrect result was reached. *Mellon, supra,* 267 Pa.Super. 191, 406 A.2d 759.

■ Here, our review leads us to conclude that the irregularity alleged by Duquesne does not entitle it to relief. An irregularity will only be found where there is a defect in the process or procedure employed in the arbitration, which rises to a level commensurate with fraud, misconduct or corruption; it will not be found where the arbitrators deliberations, with respect to the parties legal and factual arguments, result in an incorrect decision. *Cf. Paugh v. Nationwide Insurance Co.,* 278 Pa.Super. 108, 420 A.2d 452 (1980) (irregularity found when plaintiffs kept relevant and material testimony from arbitrators) *with Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 383 A.2d 189 (1978) (in common law arbitration, an award patently at odds with contract is not an irregularity which would serve as a basis for setting aside the award).

Duquesne has failed to point to any irregularity in the *procedure* of the arbitration. Rather, Duquesne seeks to have this Court relitigate the legal and factual arguments it made to the arbitrators on the issue of damages. The arbitrators are the final judges of both law and fact, and this Court is without authority to vacate or modify these determinations. We remind Duquesne, that even were we to conclude that the arbitrators erred in calculating the damage award (which we have not) such error would not provide a basis for reversal, as mistakes of judgment and mistakes of either fact or law are among the contingencies parties assume when they submit disputes to common law arbitration. *McGrew v. Travelers Indemnity Company*, 231 Pa.Super. 217, 331 A.2d 668 (1974); *Allstate Insurance Company v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973). As such, Duquesne's argument under state law must fail.[4]

After a thorough review of Duquesne's arguments and the record in this case, we conclude that Duquesne has failed to meet its burden, under either federal or state law, for vacating the arbitration panel's award. We, therefore, affirm the judgment entered in the lower court in favor of New Warwick and against Duquesne.

Judgment affirmed.

---

4. In urging this court to accept its damage theory, Duquesne has steadfastly maintained that it had the absolute right to order tonnage in the upper range, and that, as such, it would *always* order in the upper range because of the substantial price discount per ton, and also because its annual need for coal exceeded 775,000 tons. Such being the case, and regardless of New Warwick's ability to provide 775,000 tons of coal per year, we are puzzled as to why Duquesne did not order 775,000 tons in 1993, but instead ordered only 700,000 tons.